IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES MURZYNSKI,               )
                               )
            Plaintiff,         )
                               )
                               ) Civil Action 11-81 Erie
                               )
MICHAEL J. ASTRUE,             )
COMMISSIONER OF SOCIAL         )
SECURITY,                      )
                               )
            Defendant.         )

## OPINION

### I. Introduction

This case is before us on appeal from a final decision by the defendant, Commissioner of Social Security ("the Commissioner"), denying James Murzynski's claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. The parties have submitted cross-motions for summary judgment. For the reasons stated below, we will deny the plaintiff's motion and grant the defendant's motion.

### II. Procedural History

James Murzynski applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f on October 18, 2007, alleging a disability due to nerve damage in his neck, and back and neck injuries, with an alleged onset date of February 25, 2002. Plaintiff's claim was initially denied on January 4, 2008. R. 43-55. A timely request for a hearing was filed by Plaintiff. R. 57-58. A hearing was held before an Administrative Law Judge ("ALJ") on August 28, 2009, at which Plaintiff was represented by counsel and testified. R. at 24-42. Additionally, a vocational expert testified regarding the availability of jobs in the

national economy for an individual with Plaintiff's limitations and an ability to perform sedentary work. R. 38-40.

By decision dated December 29, 2009, the ALJ determined that Plaintiff is not disabled under § 1614(a)(3)(A) of the SSA. R. at 12-19. The ALJ found that Plaintiff has the following severe impairments: degenerative disk disease of the cervical spine with cervical radiculopathy; chronic low back pain; and obesity. R. at 14. He stated that he found these impairments to be severe "because they impose more than minimal restrictions on the claimant's ability to carry out basic work related functions." R. 14.

The ALJ further found that any mental impairment is not severe because any mental impairment "has not resulted in more than minimal limitations on [claimant's] ability to carry out his daily routine, relate effectively with others, and concentrate and persist at job tasks." R. 14. Specifically, the ALJ noted that Plaintiff "indicated that [he] has not received any mental health treatment in the last two years;" "there is no indication that he uses any psychotropic medications for any mental impairment;" and "there is no indication of frequent hospitalizations or emergency room evaluations for acute exacerbations of any mental impairment." R. 14.

The ALJ also determined that none of the impairments or combination of impairments meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15. In this regard, the ALJ considered Plaintiff's musculoskeletal system complaints under listings <u>1.00 Muscoloskelatal</u>, <u>1.02 Major Dysfunction of a Joint(s), (due to any cause)</u>, and <u>1.04 Disorders of the Spine</u>. R. 15. The ALJ also considered that Plaintiff testified that he uses a cane occasionally, but the ALJ determined that there was no evidence in the records to show neurological compromise or motor weakness that would require a cane and that in fact Plaintiff was not prescribed a cane. R. 15. Finally, the ALJ found that Plaintiff's obesity did not equal any of the other related listings in Appendix 1. R. 15.

The ALJ found that Plaintiff's allegations of neck pain, hand numbness, lumbar pain, shoulder and hip pain, and the limiting effects of these symptoms, to be not entirely credible. R. 16. The ALJ stated that Plaintiff's "medically determinable impairments could reasonably be

2

expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible" with the ALJ's residual functional capacity assessment. R. 16.

The ALJ determined that Plaintiff has the residual functional capacity to perform sedentary work, except that he cannot operate foot controls; cannot do any climbing, crawling, kneeling, or balancing on heights; cannot do any rapid or sudden head or neck rotation, flexion, or extension; and cannot do any repeated bending at the waist to 90 degrees. R. 15. The ALJ also found that Plaintiff "appears to be able to lift and carry light objects, bend occasionally, and perform all other activities normally associated with a wide range of sedentary work." R. 17. Additionally, the ALJ found that Plaintiff is unable to perform his past relevant work, but that he does have the residual functional capacity to perform sedentary work, which exists in significant numbers in the national economy. R. 18-19.

Plaintiff filed a timely review of the ALJ's determination, R. at 7-8, which was denied by the Appeals Council on February 18, 2010. R. at 1-6. Having exhausted his administrative remedies, Plaintiff filed the instant action seeking judicial review of the final decision of the Commissioner of Social Security denying his SSI application. As a final matter, the ALJ noted that Plaintiff had filed a prior application for SSI benefits on September 27, 2004, which was denied on February 18, 2005. The ALJ therefore explained that reference to older medical evidence currently in the record was not to be construed as a reopening of the prior claim. R. 12.

### III. Standard of Review

When reviewing a decision denying SSI, the District Court's role is limited to determining whether substantial evidence exists in the record to support the ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "more than mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Pareles, 402 U.S. 389, 401 (1971). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 205(g); Richardson, 402 U.S. at 390. A

district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh evidence of record. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D.Pa. 1998). Rather, so long as the ALJ's decision is supported by substantial evidence and decided according to the correct legal standards, the decision will not be reversed. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

**IV. Discussion**

Under the SSA, the term "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ...

42 U.S.C. § 423. A person is unable to engage in substantial activity when he:

> is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A).

In determining whether a claimant is disabled under the SSA, a sequential evaluation process must be applied. 20 C.F.R. § 416.920(a). See McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows. At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. 20 C.F.R. 20 C.F.R. § 416.920(b). At step two, the Commissioner must determine whether the claimant has a severe impairment or a combination of impairments that is severe. 20 C.F.R. § 416.920(c). If the Commissioner determines that the claimant has a severe impairment, he must then determine whether that impairment meets or equals the criteria of an impairment listed in 20 C.F.R., part 404, Subpart P, Appendix. 1. 20 C.F.R. § 416.920(d).

The ALJ must also determine the claimant's residual functional capacity; that is, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 416.920(e). If the claimant does not have an impairment which meets or equals the criteria, at step four the Commissioner must determine whether the claimant's impairment or impairments prevent him from performing his past relevant work. 20 C.F.R. § 416.920(f). If so, the Commissioner must determine, at step five, whether the claimant can perform other work which exists in the national economy, considering his residual functional capacity and age, education and work experience. 20 C.F.R. § 416.920(g). See also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000).

Plaintiff makes several arguments in support of his motion for summary judgment. Plaintiff argues that the ALJ erred by failing to find that Plaintiff's impairments or combination of impairments met the criteria for listings 1.04 Disorders of the Spine, 1.08 Soft Tissue Injury, and 12.04 Affective Disorders, and thus erred in determining that claimant was not disabled at step three. Plaintiff also argues that the ALJ failed to properly evaluate the medical evidence and erred by basing his decision on his own personal observations and opinions rather than the medical evidence. Plaintiff impliedly argues that the ALJ erred in rejecting Plaintiff's subjective complaints as not entirely credible. Thus, Plaintiff argues that substantial evidence does not support the ALJ's determination that Plaintiff has the residual functional capacity to perform modified sedentary work.

In response to Plaintiff's arguments, Defendant argues that the ALJ did not err in in failing to find that Plaintiff's impairments or combination of impairments did not meet or equal listings 1.04, 1.08, and 12.04; and in addition that Plaintiff has failed to meet his burden of establishing that he did meet these listings. Defendant also argues that the ALJ properly evaluated the medical evidence and medical source opinions. Finally, Defendant argues that substantial evidence supports the ALJ's conclusion that Plaintiff had the residual functional capacity to perform a modified range of sedentary work.

### A. Whether Substantial Evidence Supports the ALJ's Finding that Plaintiff Did Not Meet or Medically Equal any of the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1

Plaintiff first argues that the ALJ erred by failing to find that Plaintiff met or equaled a listed impairment. "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" Sullivan v. Zebley, 493 U.S. 521, 532 (1990); see also Adorno v. Shalala, 40 F.3d 43, 46 (3d. Cir. 1994) ("certain impairments, called listed impairments, are so severe that they are presumed to prevent a person from pursuing any gainful work without further proof of occupational disability"). A "claimant who establishes that she suffers from a listed impairment is deemed disabled without further inquiry." Adorno, 40 F.3d at 46.

Plaintiff argues that he meets the criteria for three listed impairments, and therefore should be deemed disabled. Plaintiff supports his argument that he meets the criteria for these three listings by referring the court to the "Facts of the Case" section of his brief, rather than setting forth the evidentiary basis and arguing that such evidence establishes that he meets each listing. Our review of the evidence, however, confirms that the ALJ did not err in finding that none of Plaintiff's impairments or combination of impairments meets or medically equals a listed impairment.

### 1. Listing 1.04, Disorders of the Spine

To meet the listing entitled "Disorders of the Spine" a claimant must establish a condition that results in compromise of a nerve root or the spinal cord. The evidence necessary to support such a finding consists of one of the following:

> **A.** Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or

> reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., part 404, Subpt. P, App. 1 § 1.04.

A review of the medical evidence clearly shows that there is no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. Thus it is not surprising that Plaintiff did not specify the medical evidence to establish this listing because there is no such evidence. We find that the ALJ did not err by failing to find that Plaintiff met the listing 1.04.

### 2. Listing 1.08, Soft Tissue Injury

The listing for "Soft Tissue Injury" provides in relevant part that there be a soft tissue injury "of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset." 20 C.F.R., part 404, Subpt. P, App. 1 § 1.08. Again, Plaintiff does not point to specific medical evidence to support his claim that he meets this listing. At best the medical evidence shows that Plaintiff was diagnosed with shoulder injuries in 2001, for which he eventually underwent arthroscopic surgery on his right shoulder. However, there is no evidence to show that Plaintiff's injuries were under "continuing surgical management, as defined in 1.00M". 20 C.F.R., part

404, Subpt. P, App. 1 § 1.08. In fact, the doctor who performed the surgery cleared Plaintiff to perform restricted sedentary work after within months of the surgery. We therefore cannot find that the ALJ erred by failing to conclude that Plaintiff met listing 1.08.

### 3. Listing 12.04, Affective Disorders

Finally, Plaintiff claims that he met listing 12.04 entitled "Affective Disorders." There is no argument or citation to evidence in Plaintiff's brief related to establishing that Plaintiff met this listing or that the ALJ erred in failing to find that Plaintiff met this listing. Our review of the record evidence likewise shows that the record evidence is insufficient to establish that Plaintiff met this listing. Although he was diagnosed with depression there is no evidence to support that he sought follow-up treatment or that he otherwise met the required level of severity for an affective disorder. See 20 C.F.R., part 404, Subpt. P, App. 1 §§ 12.04A.12.04B, and 12.04C. We therefore find no error by the ALJ as to this argument.

### B. Whether the ALJ Properly Evaluated the Medical Evidence

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence provided by Dr. Sassani and Dr. Kalata, and instead improperly based his decision on his own personal observations and opinions.

As the finder of fact, the ALJ is required to review, properly consider and weigh all of the medical records provided concerning the claimant's claims of disability. Fargnoli, 247 F.3d at 42 (citing Dobrowolsky v. Califano, 606 F.2d 403, 406-07 (3d Cir.1979)). "In doing so, an ALJ may not make speculative inferences from medical reports." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Smith v. Califano, 637 F.2d 968, 972 (3d Cir.1981)). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) (quoting Plummer, 186 F.3d at 429) (citations omitted).

8

While an ALJ may reject a treating physician's assessment, he may do so "'outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Id. (quoting Plummer, 186 F.3d at 429) (citations omitted); 42 U.S.C.A. § 423(d)(1)(A). Indeed, the ALJ may not substitute his own opinions for the opinions of an examining physician. Plummer, 186 F.3d at 422 (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir.1985)).

When the medical evidence provided by a treating physician or physician conflicts with other medical evidence of record "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Id. (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)). Moreover, the ALJ must consider all the evidence and give some reason for dismissing the evidence he chooses to reject. Id. (citing Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir.1983)). 42 U.S.C.A. § 423(d)(1)(A). Finally, "[i]f a treating physician's opinion is rejected, the ALJ must consider such factors as the length of the treatment relationship, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record evidence, any specialization of the opining physician and other factors the plaintiff raises, in determining how to weigh the physician's opinion." Sanchez v. Barnhart, 388 F.Supp. 2d 405, 412 (D.Del.2005) (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

Dr. Sassani conducted a consultative examination and completed a Medical Source Statement dated December 20, 2007. R. 208-219. Dr. Sassani noted that Mr. Murzynski was morbidly obese and complained of neck and back pain and depression. R. 208. Under the "History of Chief Complaint" section, Dr. Sassani made the following observations:

> [Mr. Murzynski] states that he was involved in a motor vehicle accident approximately seven years ago and at that time he acquired a trauma when he was involved in the accident. At that time he underwent conventional medical therapy by his family doctor. X-rays were taken and he was referred to a neurosurgeon because he had [a] herniated disk and subsequently he underwent surgery for cervical spine fusion. However, he says that the pain has never gone away and as a matter of fact, the pain has gotten worse and now it has been radiated down to

his entire back as well. [B]ecause of all this, patient has been diagnosed with
depression; however he has not had any official evaluation by a psychiatrist and
[not] being treated for depression.

R. 208-209. In addition to the cervical spine fusion, Dr. Sassani noted that Mr. Murzynski also had surgery on his right shoulder. R. 209.

Dr. Sassani's musculoskeletal examination revealed that Mr. Murzynski does not use any assistive device to ambulate; he has no trouble sitting on the chair or the exam table; he is negative for bilateral leg raises (both sitting and supine); there is no sign of muscle atrophy, sensory deficit, or motor deficit; and that he had "full range of motion of his cervical, thoracic, lumbar, and his arms and legs as well." R. 211.

Dr. Sassani indicated in the "Impression" section, with regard to Mr. Murzynski's neck and back pain, that he reviewed the "last MRI report" and noted that "it appears there is no apparent pathology except for [Degenerative Joint Disease]." R. 212. He further noted that Mr. Murzynski's obesity is a contributory factor to his back pain, and that it is possible that conventional NSAIDS or other analgesics will alleviate the pain considering that Mr. Murzynski had not seen his family doctor for quite some time. R. 212. He also noted that Mr. Murzynski had underwent spinal cord stimulation therapy to relieve his neck pain but it was not effective and that Dr. Sassani could offer no other treatment options regarding the neck pain. R. 212.

The Medical Source Statement of ability to perform work-related activities completed by Dr. Sassani revealed the following. According to Dr. Sassani, Mr. Murzynski could occasionally lift 10 pounds and occasionally carry 10 pounds. R. 2214. He was limited to one hour or less of standing and walking in an 8-hour day, and could sit less than six hours. R. 214. In addition, Dr. Sassani's opinion was that Mr. Murzynski was limited in his lower extremity with regard to pushing and pulling, and could only occasionally bend. R. 214-215.

The ALJ concluded that Dr. Sassani's report contained no rationale for the limitations he set forth. R. 17. We agree and find no error with the determination by the ALJ to not give Dr. Sassani's assessment much weight. Not only does Dr. Sassani fail to provide a rationale, the limitations he set forth are not in accord with Dr. Sassani's own evaluation. Other than Mr.

10

Murzynski's subjective complaints of pain, Dr. Sassani appears to have been unable to point to medical evidence to substantiate the limitations. Finally, we note that the ALJ's residual functional capacity determination is partially consistent with Dr. Sassani's opinion regarding Mr. Murzynski's limitations.

Dr. Kalata conducted a consultative examination in November 2009, and completed a Medical Source Statement. R. 472-482. Dr. Kalata's opinion was that Mr. Murzynski was limited in that he could only stand or walk for one hour in an 8-hour workday and could sit for 6 hours. R. 473. He further opined that Mr. Murzynski could not climb, kneel, crouch, stoop, balance, or crawl. R. 473. Essentially, Dr. Kalata determined that Mr. Murzynski could not work at all.

The ALJ did not give "much weight" to Dr. Kalata's opinion regarding Mr. Murzynski's work abilities. R. 18. According to the ALJ, it appeared that Dr. Kalata "based his assessment on the claimant's subjective complaints of pain," and included restrictions based on hypertension and chronic obstructive pulmonary disease, conditions for which there is little clinical support to establish these conditions as severe. R. 18. We find no error.

In support of his opinion, Dr. Kalata repeatedly cited to Mr. Murzynski's complaints of pain rather than medical evidence to support the limitations he set forth. In addition, his citations to Mr. Murzynski's subjective complaints were unsupported by any explanation or rationale other than a general reference to "pain." Dr. Kalata's limitations are also not entirely in accord with his own evaluation of Mr. Murzynski. We therefore find that the ALJ's decision to not afford much weight to Dr. Kalata's opinion was reasonable.

### C. Whether the ALJ Erred in Determining that Plaintiff's Subjective Complaints Are Not Entirely Credible

In relation to Plaintiff's argument that the ALJ erred in his assessment of Dr. Sassani and Kalata, he also argues that the ALJ erred in rejecting Plaintiff's subjective complaints as not entirely credible. In other words, if the ALJ's credibility determination was in error, the fact that

11

these two doctors relied upon Mr. Murzynski's subjective complaints of pain would also mean that the ALJ erred in not affording greater weight to the doctors' opinions.

An ALJ must consider subjective complaints by the claimant and evaluate the extent to which those complaints are supported or contradicted by the objective medical evidence and other evidence in the record. Social Security regulations specifically incorporate a two-part evaluation of subjective symptoms. 20 C.F.R. § 416.929. First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms. 20 C.F.R. § 416.929(b). If such impairment exists, then the ALJ must determine the extent to which the claimant's allegations are credible by evaluating "the intensity and persistence of the pain or symptom, and the extent to which it affects the [claimant's] ability to work." Hartranft v. Apfel, 181 F. 3d 358, 362 (3d Cir. 1999); 20 C.F.R. § 416.929(c). In making this determination, the ALJ should consider the objective medical evidence as well as other factors such as the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record. 20 C.F.R. § 416.929(c).

"The authority to evaluate the credibility of [the claimant] concerning pain and other subjective complaints is reserved for the ALJ." Gilmore v. Barnhart, 356 F.Supp.2d 509, 513 (3d Cir.2005) (citations omitted). While the ALJ must give a claimant's subjective complaints "serious consideration," Powell v. Barnhart, 437 F.Supp.2d 340, 342 (E.D.Pa.2006) (citing Burns, 312 F.3d at 129), "the ALJ may reject a claimant's complaints if he does not find them credible." Id. (citing Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 433 (3d

Cir.1999)); Hirschfield v. Apfel, 159 F.Supp.2d 802, 811 (E.D.Pa.2001) (citing Capoferri v. Harris, 501 F.Supp. 32, 37 (E.D.Pa.1980); Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir.1974) (holding that the ALJ may reject a claimant's subjective complaints of "disabling pain if he affirmatively addresses the claim in his decision, specifies the reason for rejecting it, and has support for his conclusion in the record"). Moreover, "if supported by substantial evidence, the AL J's credibility findings may not be disturbed upon appeal." Hirschfield, 159 F.Supp.2d at 811 (citing Van Horn v. Schweiker, 717 F.2d 871, 871 (3d Cir.1983); Smith, 637 F.2d at 972; Baerga, 500 F.2d at 312).

"If the ALJ determines that the claimant's subjective testimony is not fully credible, the ALJ is obligated to explain why." Burns, 312 F.3d at 129. The ALJ may reject subjective complaints "if he affirmatively addresses the claim in his decision, specifies the reasons for rejecting it, and has support for his conclusions in the record." Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990). When the ALJ is faced with conflicting evidence, "he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Sykes, 228 F.3d at 266 n.9 (quotations and citations omitted). A district court need not defer to the ALJ's credibility determinations that are not supported by substantial evidence. Smith, 637 F.2d at 972; Baerga, 500 F.2d at 312.

We find no error with the ALJ's credibility determination. The ALJ determined that Mr. Murzynski's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the ALJ's residual functional capacity assessment. R. 16. In support of this determination the ALJ

reviewed the medical evidence and noted that "the reports from several treating sources do not indicate that the claimant has experienced any significant complications or in fact received aggressive treatment for his musculoskeletal complaints in the last few years." R. 16. The ALJ noted that the primary cause of Mr. Murzynski's limitations is the result of the 2001 automobile accident and subsequent 2002 cervical surgery. R. 16. The ALJ also reviewed the medical evidence from treating sources in the ensuing years. R. 16. Dr. Moosy, a treating neurosurgeon, found that Mr. Murzynski's MRI of his cervical spine revealed "a stable fusion and no obvious cord impingement." R. 360. In addition, Mr. Murzynski was referred to neurologist Dr. El-Kadi for an evaluation. Dr. El-Kadi "noted that various diagnostic studies were unremarkable and that the claimant displayed full motor power and a normal gait." R. 16, citing Ex. 22 (R. 453). Other medical evidence is consistent with the conclusion that Mr. Murzynski's complaints of pain, although expected, are not as significant as claimed. R. 16-18. Significantly, the ALJ was careful to consider that Mr. Murzynski's impairments do cause limitations and work restrictions, but that the limitations and restrictions are not debilitating. R. 17.

The ALJ properly rendered his credibility finding. He considered the objective medical evidence, Mr. Murzynski's statements, his daily activities, his treatment and medication (or lack of medication), his treating and examining doctors' statements, as well as other evidence in the record. 20 C.F.R. § 416.929(c). We therefore find that substantial evidence supports the ALJ's credibility finding.

### D. Substantial Evidence

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer, 186 F.3d at 427. We find that the Commissioner's decision is based on substantial evidence.

## V. Conclusion

For the foregoing reasons, we hold that the decision of the Commissioner that Mr. Murzynski was not disabled is supported by substantial evidence and, accordingly, an appropriate order will be entered granting the Commissioner's motion for summary judgment and denying Mr. Murzynski's motion for summary judgment.

An appropriate order will be entered.

December 21, 2011
Date

Maurice B. Cohill, Jr.
Senior United States District Court Judge